IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LARRY HERMIDA,

           Plaintiff,

    v.

JP MORGAN CHASE BANK, N.A., a wholly-owned subsidiary of JPMorgan Chase & Co., a Delaware corporation,

           Defendant.

No. 3:15-cv-00810-HZ

OPINION & ORDER

Donald B. Potter
Spaulding & Potter LLP
3236 S.W. Kelly Avenue
Suite 101
Portland, OR 97239

    Attorney for Plaintiff

Jennifer A. Nelson
Ogletree Deakins Nash Smoak & Stewart P.C.
222 SW Columbia Street
Suite 1500
Portland, OR 97201

    Attorney for Defendant

1 - OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Larry Hermida brings this action against his former employer, Defendant JPMorgan Chase Bank, N.A. Plaintiff alleges Defendant wrongfully discharged him in retaliation for complaining about violations of federal or state laws, rules, or regulations. Now before me is Defendant's Motion to Compel Arbitration, seeking to stay or abate this lawsuit pending arbitration.

For the following reasons, I conclude that there was a valid arbitration agreement that encompasses the dispute between Plaintiff and Defendant. Accordingly, I grant Defendant's Motion to Compel Arbitration and dismiss this lawsuit.

## BACKGROUND

Defendant hired Plaintiff on or about October 19, 2009. Compl. ¶ 5, ECF No. 1. On July 13, 2011, Plaintiff executed a Chase Investment Services Corp. Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement (the "Agreement"). Nelson Decl. Ex. A, ECF No. 7. The Agreement contains a provision that claims between Plaintiff and Defendant would be resolved through arbitration:

> As a condition of and in consideration of my employment with JPMorgan Chase & Co. …, I agree with JPMorgan Chase as follows:
>
> **COVERED CLAIMS:** "Covered Claims" include all legally protected employment-related claims that I have or in the future may have against JPMorgan Chase … which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment on the basis of race, color, gender, national origin, citizenship status, creed, religion, religious affiliation, age, marital status, sexual orientation, gender identity, disability, veteran status, if protected by applicable federal, state or local law or any other characteristic so protected, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, including, but not limited to, defamation, negligent hiring or supervision, intentional or negligent infliction of emotional distress,

2 - OPINION & ORDER

wrongful arrest, malicious prosecution, wrongful imprisonment, breach of privacy, tortious interference, and fraudulent inducement, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, breach of a covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Worker Adjustment and Retraining Notification Act, and the Sarbanes-Oxley Act of 2002.

**EXCLUDED CLAIMS:** This Agreement does not cover, and the following claims are not subject to arbitration under this Agreement: (a) any criminal complaint or proceeding, (b) any claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefit laws, except that claims for retaliation pursuant to these laws shall be subject to arbitration under this Agreement, (c) any claim under the National Labor Relations Act, and (d) claims for benefits under a plan that is governed by ERISA.

\*\*\*

**Discovery:** Discovery requests and the provision of discovery must be consistent with this Agreement, general standards of due process, the Rules of AAA and the expedited nature of arbitration. The guidelines below are guidelines and do not establish a minimum of discovery, and will be applied subject to these principles. Thus, there may be cases which warrant less (or more) discovery than that outlines below. … In general, the Parties may take the depositions of all expert witnesses and up to three (3) other individuals. … The arbitrator will resolve discovery disputes and may expand or restrict the scope of discovery within his or her reasonable discretion, and the rules of AAA consistent with the expedited nature of arbitration.

Id. at 8–9. The Agreement also addresses applicable procedural rules, the duties of the arbitrator, available remedies, location of the arbitration, and the allocation of arbitration costs. Id. at 8–10.

On or about July 8, 2013, Defendant terminated Plaintiff's employment. Compl. ¶ 5, ECF No. 1. In May 2015, Plaintiff filed this case in the United States District Court for

3 - OPINION & ORDER

the District of Oregon. Compl., ECF No. 1. Defendant now brings this Motion to Compel Arbitration and stay or abate the lawsuit pending completion of arbitration.

## STANDARDS

Congress enacted the Federal Arbitration Act (FAA) to "advance the federal policy favoring arbitration agreements." Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1217 (9th Cir. 2008). The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable." Id.; see also 9 U.S.C. § 2. Courts must "rigorously enforce" arbitration agreements and "must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999) (citing Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985)). Accordingly, the court determines "(1) whether a valid agreement to arbitrate exists, and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

In the context of a motion to compel arbitration, the burden of proof is on the party contesting arbitration. Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem" is construction of the contract language, "an allegation of waiver," or a "defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25 (1983). If the court finds the matter subject to arbitration, it may either stay the matter pending arbitration or dismiss the matter. EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002); see also 9 U.S.C. § 3, 4.

## DISCUSSION

In its motion, Defendant contends the Agreement is a valid, written, and enforceable agreement between it and Plaintiff and that under the Agreement, Plaintiff agreed to arbitrate his

4 - OPINION & ORDER

claims. Therefore, according to Defendant, the Court must order the parties to resolve this matter in binding arbitration. In response, Plaintiff argues that: (1) under Oregon law, the Agreement is an invalid contract, and (2) even if such an agreement were formed, it is not enforceable because it is substantively unconscionable.

I.    Formation of the Arbitration Agreement

First, the Court must determine the validity of the Agreement as a contract. Plaintiff contends that under Oregon law, the Agreement is not a valid contract. To determine the validity of the Agreement, the Court must examine Oregon law in the context of the FAA. Next, the Court must analyze whether there was adequate consideration to form the Agreement.

A.    Federal Arbitration Act Governs the Arbitration Agreement

The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies broadly to arbitration agreements involving "commerce among the several States or with foreign nations" or territories. 9 U.S.C. § 1. Specifically, the Supreme Court held that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." Waffle House, 534 U.S. at 289. Thus, the Agreement in this case, if properly formed, is an employment contract subject to the FAA.

The FAA preempts Oregon arbitration law when Oregon law imposes additional enforceability conditions not applicable to other contracts. See, e.g., Bettencourt v. Brookdale Senior Living Communities, Inc., No. 09-CV-1200-BR, 2010 WL 274331 (D. Or. Jan. 14, 2010). The Oregon Arbitration Act imposes conditions beyond those in the FAA for enforcing arbitration agreements, such as notice of arbitration agreements prior to employment or "subsequent bona fide advancement of the employee by the employer" after signing an

5 - OPINION & ORDER

arbitration agreement during the course of employment. ORS 36.620(5). The FAA preempts these additional conditions.

    B. Adequate Consideration for Enforceable Contract

Plaintiff argues that under Oregon law, the Agreement is invalid because there was no consideration. Adequate consideration under Oregon arbitration law requires an advancement along with entry into an arbitration agreement if the agreement is entered into during the course of employment. Id. However, because the FAA preempts this requirement, the Court looks to basic Oregon contract law for consideration requirements. See, e.g., Bettencourt, 2010 WL 274331. Under Oregon contract law, continued employment is sufficient consideration to support a change in the terms and conditions of employment. See McHorse v. Portland Gen. Elec. Co., 268 Or. 323, 331, 521 P.2d 315, 319 (1974) (an employer's unilateral change to employment policies is seen as "an offer to the employee which can be accepted by the employee's continued employment, and such employment constitutes the underlying consideration for the promise"); see also Gray v. Rent-A-Ctr. W., Inc., No. CV 06-1058-HU, 2007 WL 283035, at *6 (D. Or. Jan. 24, 2007), rev'd, 314 F. App'x 15 (9th Cir. 2008), vacated, 295 F. App'x 155 (9th Cir. 2008). Thus, because Plaintiff continued his employment with Defendant after signing the Agreement, there was adequate consideration for a valid contract and there are no issues with the formation of the Agreement.

II.    Enforceability of the Arbitration Agreement

When grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce arbitration agreements. 9 U.S.C. § 2; see also Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 683 (1996); Ferguson v. Countrywide Cred. Indus., Inc., 298 F.3d 778, 782 (9th Cir. 2002). Federal courts "apply ordinary state-law principles that govern the formation of contracts" to evaluate the validity of an arbitration agreement. First Options of Chi., Inc. v.

6 - OPINION & ORDER

Kaplan, 514 U.S. 938, 944 (1995); see also Cir. City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (federal courts apply the law of the forum state to determine enforceability of an arbitration agreement). Thus, the Court must interpret and apply Oregon law as applied by Oregon courts. See S.D. Myers, Inc. v. Cty. of S.F., 253 F.3d 461, 473 (9th Cir. 2001).

Unconscionability is a defense "that may render an agreement to arbitrate unenforceable." Chalk v. T-Mobile USA, Inc., 560 F.3d 1087, 1092 (9th Cir. 2009) (citing Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976, 981 (9th Cir. 2007)). "The party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable." Motsinger v. Lithia Rose-FT, Inc., 211 Or. App. 610, 614, 156 P.3d 156, 159–60 (2007) (citing W.L. May Co., Inc. v. Philco-Ford Corp., 273 Or. 701, 707, 543 P.2d 283, 286 (1975)). Unconscionability is a "question of law … determined [by the court] based on the facts in existence at the time the contract was made." Motsinger, 156 P.3d at 159.

"In Oregon, the test for unconscionability has two components—procedural and substantive." Motsinger, 211 Or. App. at 614, 156 P.3d at 160 (citing Vasquez-Lopez v. Beneficial Or., Inc., 210 Or. App. 553, 566, 152 P.3d 940, 948 (2007)). "Procedural unconscionability refers to the *conditions* of contract formation, and substantive unconscionability refers to the *terms* of the contract." Id. (internal citation omitted). "Although both forms of unconscionability are relevant, ... only substantive unconscionability is absolutely necessary." Chalk, 560 F.3d at 1093 (quoting Vasquez-Lopez, 210 Or. App. at 567, 152 P.3d at 948) (internal quotation marks omitted). In this case, procedural unconscionability is not at issue; instead, Plaintiff claims substantively unconscionability.

A.  Substantive Unconscionability

The Court must determine whether the arbitration clause is substantively unconscionable in light of the unequal bargaining power between the parties. The "underlying inequality in the

7 - OPINION & ORDER

parties' ability to bargain" indicates an adhesion contract. Chalk, 560 F.3d at 1094. Plaintiff contends the Agreement's adhesive nature establishes substantive unconscionability. Pl.'s Mem. in Opp'n 7, ECF No. 11. The Court determines substantive unconscionability by examining the disparity in bargaining power between parties "'combined with terms that are unreasonably favorable to the party with the greater power[.]'" Chalk, 560 F.3d at 1094 (quoting Motsinger, 156 P.3d at 161).

   B.  Terms of the Arbitration Agreement

Terms evaluated to determine substantive unconscionability of an arbitration agreement include one-sided discovery, one-sided coverage, and the allocation of payment of the arbitration fees. See Ferguson, 298 F.3d 778. Plaintiff asserts unconscionability because of the one-sided discovery provision and the one-sided coverage of the Agreement. Pl.'s Mem. in Opp'n 6–10, ECF No. 11.

    1.  One-Sided Discovery

One-sided discovery provisions occur when one party is in a superior position to gather facts related to the case. For example, in Ferguson, the arbitration agreement limited the parties to "no more than three depositions[.]" 298 F.3d at 786. The court acknowledged that while the arbitration agreement favored the defendant because of its "superior position to gather information," the discovery provision nonetheless "may afford [the plaintiff] adequate discovery to vindicate [plaintiff's] claims." Id. at 786–87. Part of the reason for this conclusion was because the agreement at issue gave the arbitrator the ability "to extend discovery limits for 'good cause.'" Id. at 787 (citation omitted).

The Agreement here also limits discovery by allowing only three non-expert depositions. Nelson Decl. Ex. A, at 9, ECF No. 7. However, the Agreement provides that the limits on discovery are "guidelines and do not establish a minimum of discovery… there may be cases

8 - OPINION & ORDER

which warrant less (or more) discovery than outlined." Id. Additionally, "[t]he arbitrator will resolve discovery disputes and may expand or restrict the scope of discovery." Id. Thus, similar to Ferguson, because the arbitrator has the ability to extend discovery to meet the needs of the particular case, the discovery limitations do not "necessarily prevent [Plaintiff] from vindicating his statutory rights." 298 F.3d at 786–87 (internal citation omitted). Therefore, the Agreement is not substantively unconscionable with regard to one-sided discovery.

   2.   One-Sided Coverage

Under Oregon law, the court determines whether an agreement is so unbalanced as to be unconscionable on a case-by-case basis. Motsinger, 156 P.3d at 165–66. The Oregon Court of Appeals found that "[g]iven the public policy favoring arbitration as a forum for dispute resolution, and Supreme Court case law recognizing the adequacy of that forum, we are reluctant to conclude that a unilateral agreement to arbitrate is inherently unconscionable in all cases." Id.

In Ferguson, the agreement specifically covered "claims for breach of express or implied contracts or covenants, tort claims, claims of discrimination or harassment based on race, sex, age, or disability, and claims for violation of any federal, state, or other governmental constitution, statute, ordinance, regulation, or public policy." 298 F.3d at 784. Additionally, the agreement excluded "claims for workers' compensation or unemployment compensation benefits, injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." Id. at 784–85. The Court found that this unbalance in the arbitration agreement was not justified "because the agreement compels arbitration of the claims employees are most likely to bring against [the defendant] but exempts from arbitration the claims [the defendant] is most likely to bring against its employees." Id. at 785 (internal citations omitted). Therefore, the

court found that the one-sided nature of the agreement was one factor for indicating substantive unconscionability. Id.

The agreement in this case is not one-sided. In the Agreement, Plaintiff and Defendant mutually agreed to a list of claims that must be resolved through arbitration. Nelson Decl. Ex. A, at 8, ECF No. 7. Plaintiff's covered claims include "all legally protected employment-related claims that I have or in the future may have against JPMorgan Chase[.]" Id. Defendant's covered claims include "all legally protected employment-related claims that JPMorgan Chase has or in the future has against" Plaintiff. Id. Thus, just as Plaintiff's employment-related claims are subject to arbitration, Defendant's employment-related claims against Plaintiff are also subject to arbitration. Notably, the Agreement here compels arbitration for an extensive list of claims an employer could bring against its employee including: tortious interference with contract, breach of privacy, conversion, and violations of *any* other common law, federal, state or local statute, ordinance, regulation or public policy. Thus, unlike Ferguson where the agreement excluded employer-based claims such as "injunctive and/or equitable relief for intellectual property violations, unfair competition, and/or the use and/or unauthorized disclosure of trade secrets or confidential information" — those types of claims are included in the Agreement. 298 F.3d at 784–85. Additionally, the claims the Agreement expressly exclude from mandatory arbitration are primarily claims that Plaintiff might bring (for example, unemployment insurance claims, workers' compensation claims, and claims under the National Labor Relations Act). Therefore, the Court concludes that the terms of the Agreement are sufficiently balanced and are not so lacking in mutuality as to be substantively unconscionable.

C. Unconscionability of the Arbitration Agreement

"[T]he doctrine of unconscionability does not relieve parties from all unfavorable terms that result from the parties' respective bargaining positions; it relieves them from terms that

10 - OPINION & ORDER

are *unreasonably* favorable to the party with greater bargaining power." Motsinger, 156 P.3d at 166–67 (internal quotation marks, footnote, and citations omitted). In Ferguson, it took an "insidious pattern in [the defendant's] arbitration agreement" for the court to find substantive unconscionability. 298 F.3d at 787. The Ferguson court found one-sided coverage of the arbitration agreement, an arbitration fee provision violating state law, and a discovery provision that "in the context of the arbitration agreement … reaffirms our belief that the arbitration agreement as a whole is substantively unconscionable." Id. at 784–87. In contrast, the Agreement in this case does not contain any unreasonably favorable terms to Defendant. Therefore, the Agreement is not substantively unconscionable.

## CONCLUSION

Defendant's Motion to Compel Arbitration [6] judgment is GRANTED and the case is dismissed.

IT IS SO ORDERED.

Dated this \_\_3\_\_ day of October, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

11 - OPINION & ORDER